## SIEBRECHT v. SIEBRECHT.

(Supreme Court, Special Term, Westchester County. October, 1911.)

HUSBAND AND WIFE (§ 48\*)—CONVEYANCE OF PROPERTY—AGREEMENT TO RE-CONVEY—EVIDENCE.

A wife about to undergo a serious surgical operation having conveyed her property to her husband, evidence *held* insufficient to warrant a finding that such conveyance was made on his promise to reconvey in case she recovered.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 242–248; Dec. Dig. § 48.\*]

Suit by Julia W. A. Siebrecht against Henry A. Siebrecht, Jr., to compel a reconveyance of certain premises. Judgment for defendant.

Henry G. K. Heath, of New York City, for plaintiff.
John M. Gardner, of New York City, for defendant.

MILLS, J. This is an action in equity brought by plaintiff, a wife, to compel the defendant, her husband, to reconvey to her certain premises, land and house, situated on North avenue in the city of New Rochelle, which she, in January, 1908, conveyed to him, and upon which, at that time, they, with their children, resided. When such conveyance was made, she was about to go to a hospital and undergo there a serious operation. She went on the 12th of February following, the deed having been acknowledged on the 31st of January, was operated upon, recovered, and returned to their home. Subsequently, various marital differences having arisen between the parties, or at least having become acute, she demanded that the husband reconvey the premises to her. He refused, and this action resulted.

The case is a difficult one to decide. I cannot but feel a strong sympathy with the plaintiff as a wife and mother who seems to have re-

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ceived from the defendant, her husband,, at least inconsiderate if not harsh treatment; but, whatever may be said or thought of what a jury might do, it is supposed that a judge may be able to decide even such a case uninfluenced by such a. feeling.

The important and controlling question is one of fact, viz.: ..Has it been established that the defendant obtained from the plaintiff the deed, dated January 24, 1908, and acknowledged January 31st, upon his promise that, if she survived the operation, he would, upon her return from the hospital, reconvey the property to her?

It is contended by the learned counsel for the plaintiff that, in view of the confidential relation then existing between the parties as wife and husband, and of the plaintiff's sick condition and her probably consequent at least partial impairment of mental and physical strength, the burden of proof should be held to rest upon the defendant to establish that the transaction of the taking of the deed was fairly conducted upon his part and well understood by the plaintiff; that is, that she was making an absolute and final conveyance of the property. I think that this contention is well made and shall proceed to judge the evidence by that standard.

It is not claimed, however, that the plaintiff did not, when she executed such deed, understand its absolute final form. Her only impeachment of the good faith of the defendant in the transaction is her claim that he made the alleged promise to reconvey upon the stated condition; and that, such condition having subsequently happened, he has refused to perform his promise.

She has testified clearly and positively to the making of the promise; and of course, if it were made, its breach is apparent and indeed confessed. Her appearance under examination, even upon the cross-examination, was that of a truthful witness. I can find, however, in the rest of the evidence, nothing which seems to me to serve as a direct or even circumstantial corroboration of her statement that such promise was made, save, perhaps, to some extent, the circumstances that prior to that time the record title to those premises, and earlier that of the Rochelle Park property, the proceeds of which in substance purchased the former property, had been in her individual name, although the original purchase had been made with the defendant's money; and also that the hazard to the plaintiff of the impending operation was ample ground for the defendant to seek to have the formal and record title transferred to him until such hazard should be past.

In these modern days, however, the circumstance that a husband engaged in business permits the record title to his home place to stand in his wife's name is far from conclusive upon the question whether it was his, or rather their, real intent and understanding that the property should be really hers, or merely that she should, for the time being, hold the record title subject at all times to convey it as he may direct. The court may take notice from actual judicial experience that, when the contest is between the husband and his creditor, wife and husband often both testify that the real intent and understanding was that the property should be the wife's absolutely and always.

This, however, is the less usual case where the controversy is between wife and husband.

The declarations of the defendant, testified to by the witness Mrs. Alexander, were made long before the transaction of the deed of January, 1908, and merely show that he intended the North avenue property as a family home; the same to be held in the wife's name. This does not go so far as to indicate that it was not his intention to take the title in his own name under changed circumstances. Defendant's repeated declarations to his sister-in-law, Mrs. Alice May Siebrecht, do not appear to be significant upon the question involved. All were made prior to this transaction of the deed of January, 1908. At one time that witness summarized them thus (he said): "That everything he had was in his wife's name," which was then literally true and is entirely consistent with either theory of the case. As moral proof, the most significant cotemporaneous declaration proven is that contributed by the testimony of defendant's mother, to the effect that about the time of the making of the deed in January, 1908, plaintiff said to her:

"I am going to deed the house back to Henry (meaning the defendant). It would be better for Henry and the children if anything happened to me."

But this must be considered as a declaration by the plaintiff put in evidence in her own behalf. It is most significant, moreover, that the plaintiff did not then tell her mother-in-law, if such were the fact, that Henry, the defendant, had promised to convey the property back to her if she survived the operation. It is strange that, in telling her mother-in-law so much as she did, she omitted to tell the rest, which is here the main thing.

Upon the other side of the case, defendant has testified positively and clearly that no such promise was made by him; that in fact, all along, back to within a few days after the deed of the North avenue property was originally taken to his wife, there had been in the safe at home, with the other papers to which he and she had access, an unrecorded deed of that property by her back to him, which had been drawn and executed by her before the witness Jenkins; and that the occasion for the making of the deed in January, 1908, was the discovery by him of the fact that such deed could not be found, and also the fact of the approaching operation.

The fact, therefore, that the operation was about to be performed, was, according to the theory and contention of each party, the immediate moving cause of the making of the deed in January, 1908. Such fact by itself, being consistent with either theory, cannot be regarded as of controlling force.

If it be true that there was such a prior deed by plaintiff to defendant, that fact must be regarded as very important, and indeed, I think, as controlling, in view of the condition of the other evidence. Jenkins, called as a witness for the defendant, has testified distinctly and positively that within a few weeks, he thinks in April, after the deed from Craft to plaintiff in January, 1906, of the North avenue property was made, he prepared or had prepared in his office a deed

by plaintiff to defendant of the same property; and that she then forthwith called at his office and signed it and acknowledged it before him as a notary public and took it away with her, as she said, to give to her husband. All this, however, is distinctly and positively denied by the plaintiff. Except for an evident mistake as to his having had the prior Craft deed to the plaintiff in his possession in April, 1906, which other evidence shows to have been impossible, but which amounts to only a collateral matter, his testimony in the minutes reads exceptionally well and appears there to have been unshaken by cross-examination. His appearance upon the stand did not, at the time, impress me as favorably. As far as the evidence goes, however, he seems to be disinterested; and as to the main fact, that plaintiff, at or near the time mentioned, certainly long before January, 1908, executed a deed back to her husband, he cannot have been innocently mistaken; but, if she did not do so, he must have deliberately testified falsely. It is unnecessary for me to decide what I would determine as to this fact, if his testimony stood alone, uncorroborated save by the defendant. It is corroborated in a substantial respect by the testimony of his former partner, the witness Hines. The latter testified positively that at about the time mentioned by Jenkins he saw the plaintiff in their offices, and that her business, whatever it may have been, was not with him. Hines' appearance as a witness was most favorable, and he impressed me as being entirely sincere. The plaintiff testified that she was not, at or near that time, in those offices, and indeed that she was never there except on January 31, 1908, when she executed the deed at that time. Hines testified positively that he was not in the offices upon that occasion. He seems, from the evidence, and also from his appearance on the stand, to be entirely disinterested. I feel myself, therefore, required to credit his testimony and as well that of Jenkins as to the main fact testified to by him.

It may be said that there is nothing intrinsically improbable in the situation, which would be established by Jenkins' testimony, as one can well understand that it is not an uncommon thing for the record title of the home to be in the wife's name, and at the same time for the husband to hold an unrecorded deed back to him from her.

The learned counsel for the plaintiff certainly has not been wanting in either zeal or industry, and it seems significant that there is no evidence of any admission by the defendant to any one that he had taken the deed from his wife under any such promise.

Upon the whole evidence, therefore, I conclude that I cannot find that the promise to reconvey, alleged by the plaintiff, was made by the defendant. Therefore I must decide the case in the defendant's favor, but without costs.